Patricia L. HIGHTS, Plaintiff,

v.

INTERNATIONAL HARVESTER CO.,
n/k/a Navistar International
Transportation Corp., Defendants.

No. 86 C 1771.

United States District Court,
N.D. Illinois, E.D.

Dec. 9, 1987.

Patricia L. Hights, pro se.

Laurence H. Levine, Michael D. Karpeles, Latham & Watkins, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Patricia Hights ("Hights") has sued Navistar International Transportation Corp. ("Navistar"),[1] alleging racial discrimination (Hights is black) in violation of 42 U.S.C. § 1981 ("Section 1981") and 42 U.S.C. § 2000e–5 ("Title VII") as well as breach of contract. Navistar has moved for summary judgment under Fed.R.Civ.P. ("Rule") 56.[2] For the reasons stated in this memorandum opinion and order, Navistar's motion is granted in its entirety.

### Facts[3]

In late January 1984[4] Hights interviewed for a legal secretary position with Navistar. During the interview she spoke at some length with Marge Horvath ("Horvath")[5] (who supervised the Law Department's secretaries) and for a few minutes with associate general counsel Stanley Roseberry ("Roseberry"). Roseberry told Hights the vacant position paid about $12,000 per year, which Hights said was inadequate (Hights Dep. 79–81, 83–84).

Just a few weeks later, Personnel Manager Bob Andrews ("Andrews") phoned Hights to offer her a new position in the Law Department at a salary of about $16,000 (*id.* 87–91; Andrews Dep. 20–21; Horvath Aff. ¶ 2). She accepted immediately (Hights Dep. 89–90) and reported to work on February 22 (two days later) (*id.* 91).

When Hights began working she was told by both Andrews and Horvath that her employment was subject to a 60–day probationary period (*id.* 93, 97). She received her 30–day probationary review from Horvath on March 30 (seven days after the end of the 30–day period) and was rated satisfactory in all respects (Horvath Dep. 32–35; Horvath Aff. ¶ 7).

On April 26 Horvath told Hights she would remain on probationary status.[6]

---

1. When Hights worked for Navistar it was still known as International Harvester Co. This opinion uses the current Navistar name throughout.

2. Hights has elected to act pro se. In accordance with its uniform practice whenever Rule 56 motions are asserted against unrepresented litigants (cf. *Lewis v. Faulkner,* 689 F.2d 100, 102 (7th Cir.1982)), this Court mailed Hights a notice as to the procedural requirements she had to observe in response (see Appendix). Unlike the pro se litigants most frequently encountered in the court system, Hights has demonstrated a keen awareness of her obligations under the Rules and an ability to use the discovery process in a knowledgeable way.

3. Rule 56 principles impose on the party moving for summary judgment the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). For that purpose this Court draws all "reasonable inferences, not every conceivable inference" in the light most favorable to the nonmovant—in this case Hights (*DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir. 1987)). On this motion the parties have engaged in extensive discovery and have briefed the issues thoroughly. Key memoranda and exhibits will be referred to in this way:

 1. Navistar's Memorandum in Support of its Motion for Summary Judgment: "D.Mem. —" or "Navistar Mem.—";
 2. Hights' "Answer" to D.Mem: "P.Mem. —" or "Hights Mem.—";
 3. Hights' Statement of Genuine Issues of Fact: "P. Facts ¶—";
 4. deposition testimony pages: "[Name of deponent] Dep.—"; and
 5. affidavit paragraphs: "[Name of affiant] Aff. ¶—."

4. All relevant dates are in 1984, so the year reference will be omitted from the rest of this opinion.

5. Horvath is now Margaret Horvath Reilly, but the parties have continued to use her name as of 1984. This opinion does the same.

6. Navistar says Horvath "extended" Hights' probation. Hights Mem. 12 contends the use of that term is "a subliminal brainwashing scheme" because she says Horvath told her she was "holding" Hights' 60–day review. While

Horvath said other secretaries in the Law Department had complained that Hights was non-cooperative and they felt intimidated by her (Hights Aff. ¶ 60). Hights asked to know who had made the complaints, but Horvath refused to identify the complainers (*id.* ¶ 61). Next day Hights spoke with Andrews to determine whether it was possible for her probationary period to be extended (*id.* ¶ 106). He told her he was unfamiliar with any policy allowing probation to be extended and would talk to Horvath.

Hights called in sick on April 30, May 1 and May 2. Shortly after reporting to work on May 3 she resigned (on that same day). This action followed.

### Section 1981 and Title VII Claims

Hights claims she was treated differently from white secretaries when her probation period was extended. On such a disparate treatment claim, the burdens of proof and production are the same under both Section 1981 and Title VII (*Mason v. Continental Illinois National Bank*, 704 F.2d 361, 364 (7th Cir.1983); *Oglesby v. Coca-Cola Bottling Co. of Chicago/Wisconsin*, 620 F.Supp. 1336, 1346 (N.D.Ill.1985)). As *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed. 2d 207 (1981) (citations omitted) put it, those burdens are:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's" [adverse treat-

ment]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

In all of this, it must be remembered the ultimate inquiry is whether Hights has suffered any adverse treatment because of impermissible racial animus (*Gill v. Westinghouse Electric Corp.*, 594 F.Supp. 48, 51 (N.D.Ill.1984)). Of course, to survive Navistar's summary judgment motion Hights need not *prevail* on any issue. All she must demonstrate is the existence of disputed material facts that, if resolved in her favor by a fact-finder, would justify judgment for her.

### 1. Prima Facie Case

Hights may establish a prima facie case of race discrimination either directly or by inference. Those alternatives will be examined in turn.

As to the first, Hights has adduced no direct evidence of racial animus on the part of Navistar or its supervisors. She heard no racial slurs, nor was she the brunt of any racial jokes (Hights Dep. 173), and she knows of no other black secretaries in the Law Department who have been subject to discrimination (*id.* 185–86, 212–13). Moreover, in her extensive affidavit submitted in response to Navistar's motion, Hights never adverts to any direct indications of discrimination. She must therefore rely on indirect evidence.

In that respect, our Court of Appeals has described the prima facie case as containing four elements (*Mason v. Pierce*, 774 F.2d 825, 828 (7th Cir.1985): [7]

---

Hights makes much of the difference in terminology, it is immaterial. Whatever specific words were used, the substance of the conversation was that Horvath was not approving Hights' performance to that point and intended to keep her on probation for an indefinite period of time to see if she improved. Both parties so understood the conversation.

**7.** *Mason* involved the discharge of an employee, whereas here Hights claims constructive discharge when her probationary period was ex-

tended. *Friedel v. City of Madison*, 832 F.2d 965, 972 (7th Cir.1987) has cautioned that "the elements of a *prima facie* complaint will vary depending on the particular facts of various allegations of discrimination." Nevertheless, the *Mason* test seems appropriate here, given the similarity between allegations of discipline and discharge on the one hand and claims of constructive discharge on the other. Navistar Mem. 9 suggests *Mason* as establishing the standard for a prima facie case, and Hights has not quarreled with that.

(1) she belongs to the protected class, (2) she was qualified for the position, (3) she suffered an adverse employment decision, and (4) the employer sought to replace her.

Hights clearly satisfies the first and fourth elements, but Navistar claims she undisputedly fails on the second and third.

█ As for the second, Navistar says it is uncontested that Hights' performance during her probationary period was unsatisfactory because she was "uncooperative, intimidating to her fellow secretaries, ... monopolized the Xerox 860 word processor" and sometimes refused to cover phones for other secretaries (D.Mem. 10 & n. 4). Yet, while Horvath unquestionably received complaints along those lines, it is very much disputed whether Hights' performance was actually as described. Hights' own affidavit, while it contains much that is hearsay or otherwise inadmissible, does controvert each of the alleged inadequacies based on her own recollection of the specific incidents that gave rise to the complaints. There is no need to detail the contested facts: They permeate the record. And the test of Hights' qualification for the position is her *actual* performance, not what her superiors or co-workers believed it to be.[8] Because Navistar concedes that in other respects Hights' performance was satisfactory (D.Mem. 19), whether she was qualified is a disputed factual issue.

█ Navistar also says Hights suffered no adverse employment decision because the extension of her probation was better than termination—which, given her inadequate performance, was all she could expect as a probationary employee. Yet from Hights' standpoint the extension must be seen as an adverse decision: She expected to become a permanent rather than a pro-

bationary employee at the end of 60 days. In any case, to the extent Navistar contends the extended probation benefited Hights, that conclusion rests on first deciding her performance was inadequate. As already explained, that fact is contested.

Whether Hights has established a prima facie case therefore depends on contested issues of material fact, and summary judgment on that basis is not appropriate. Under *Burdine*, that is enough—at least on the present motion—to shift the burden of going forward to Navistar.

*2. Legitimate, Nondiscriminatory Reason*

█ There is no question Navistar has advanced a legitimate nondiscriminatory reason for extending Hights' probation. Certainly the ability of a secretary to work cooperatively with fellow secretaries, particularly when they must share scarce equipment, is a legitimate basis for employment decisions (e.g., *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985)). Hights does not contend such concerns are illegitimate. Indeed she recognizes their validity (Hights Dep. 253, 240–41). Thus the burden returns to Hights to show (or more accurately to raise a factual dispute as to whether) the reason Navistar gives is merely a pretext for discrimination.

*3. Pretext for Discrimination*

In an effort to meet her burden on the pretext question, Hights has picked through the extensive discovery record and identified a number of inconsistencies and perceived inconsistencies among the evidence. As already noted, such inconsistencies, coupled with her affidavit denying many of the specific charges, are sufficient

---

**8.** Navistar cites *Huhn v. Koehring Co.,* 718 F.2d 239, 244 (7th Cir.1983) for the proposition that management's beliefs as to performance, rather than the worker's actual performance, govern on the issue of whether an employee was qualified. *Huhn* should not be stretched quite so far. There the uncontradicted evidence showed plaintiff's sales and collections had dropped significantly, and the issue was whether his performance was nevertheless satisfactory because the employer had unrealistic expectations. *Huhn* held the employer's expectations governed. Here the *facts* of Hights' performance *are* disputed. In other words, the disputed issue is, for example, whether Hights monopolized the word processor, and not whether Navistar could legitimately expect her not to. Of course, as the following discussion will show, the distinction becomes academic in a case such as this.

to establish a genuine issue of fact whether she actually behaved as alleged.

■ But that is not enough. It would not meet Hights' burden simply to generate a genuine dispute as to whether Navistar decided wrongly when it determined she was uncooperative. Nor would it suffice were she able to raise a genuine dispute as to whether Navistar's stated reasons are a pretext for some other reason. Rather the facts, with reasonable inferences, must support a finding that the proffered reasons are a pretext for discrimination. *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 559 (7th Cir.1987) (emphasis in original) states the obvious:

> Showing that the employer dissembled is not necessarily the same as showing "pretext *for discrimination.*"

■ It is unnecessary to recount every alleged inconsistency Hights identifies. Two examples will suffice, because they are really her best shot—and they do not even begin to suggest the prohibited motive on Navistar's part.[9]

On April 26, the day she extended Hights' probation, Horvath wrote a memo to the file detailing a complaint about Hights she had received from Theresa Anderson ("Anderson") through Jacqui Rock ("Rock"). Horvath said in part (P.Mem.Ex. 2(e)):

> Theresa was going to use the word processor, in the back, when Pat [Hights] sat down.

Later Anderson testified Hights was already working at the word processor when she approached (Anderson Dep. 13), casting doubt on the accuracy of the memo's characterization of the incident. Horvath also later testified the incident actually occurred at the center word processor (nearer to Hights' station) and, when confronted with the earlier memo to the file, indicated it must have been in error (Horvath Dep. 49, 78). Hights, however, says the April 25 incident did occur at the back word processor (Hights Aff. ¶ 39).[10]

Hights makes a great deal of these inconsistencies, repeatedly saying they show Horvath's decision to extend her probation was based on racial bias (P.Mem. 4, 5; P. Facts ¶ 1; Hights Aff. ¶¶ 117–18). Yet Horvath never claimed to have witnessed the incident on April 25. Indeed, her memo to the file was only reporting on what Rock told her Anderson had told Rock. And, because she was writing after her meeting with Hights, the details of what she said might have been affected by Hights' version. While the exact source of Horvath's description of the incident during her deposition is unclear, it is also clearly hearsay or double hearsay.

It would demand a truly extraordinary leap to infer from these minor discrepancies that Navistar's proffered reasons for extending Hights' probation were a pretext for racial discrimination. As n. 3 reminds us, this Court is to draw only reasonable pro-Hights inferences from the evidence, not every conceivable inference. Such discrepancies in Horvath's statements *might* be sufficient to imply she acted without adequately investigating the incident. If supported with other consistent evidence, the inconsistencies *might* even be stretched to suggest some personal animus—but what controls here is that they simply don't reasonably suggest racial bias.

This example of a contested fact was chosen because Hights repeatedly stresses its importance. In other circumstances she relies on "inconsistencies" that cannot even fairly be said to exist. Thus, Horvath wrote in the same April 26 memo that she had advised Hights of some "incidents [that] occurred at different times during the last month" (P.Mem.Ex. 2(e)). Hights interprets "the last month" to mean March and points to her 30–day evaluation of March 30 to show there were no problems then (P.Mem. 14; P. Facts ¶ 12; Horvath Aff. ¶ 7; Horvath Dep. 33). Again the

---

9. This Court has reviewed everything Hights offers and has found it totally wanting. It sees no need to recount and refute each detail—an unjustifiable added burden under the circumstances.

10. Anderson says it was at the center word processor (Anderson Dep. 13).

purported discrepancy is then stressed as showing Horvath was biased.

But it requires an abnormal reading of "during the last month"—words used almost at the end of April—to say they referred to March rather than to the month-long period immediately preceding April 26. There simply is no inconsistency, and even if there had been it would not reasonably suggest racial bias. Hights repeatedly relies on this sort of distortion of testimony or other statements to create "discrepancies" in the accounts of various defense witnesses that cannot fairly be said to exist.

As already discussed, whether Hights was uncooperative, intimidating or monopolized the word processors is a disputed factual issue. But there is no dispute that Horvath received complaints along all those lines about Hights, either directly or indirectly, from several secretaries. P. Facts asserts that some of the secretaries lied when they complained, but Hights does *not* contend no one complained. Hights sees discrimination in Horvath's failure to get her side of the story before extending probation. But extending probation is a rather mild action (compared to terminating employment), and there is no dispute that Horvath heard Hights' version on April 26 (P.Ex. 2(e); Hights Aff. ¶ 57).

Horvath says she genuinely believed Hights was a problem when she acted (Horvath Aff. ¶ 10), and there is substantial evidence that others had brought the various problems to Horvath's attention before she extended Hights' probation. Moreover, Horvath took no action against Hights until she received those complaints and heard other concerns in the course of her 60–day review. As Hights stresses, the 30–day review had mentioned no difficulties. Against this very logical chain of events, tending to show a nondiscriminatory reason for Navistar's action, Hights can muster only minor discrepancies in testimony and her own unsupported assertions of racial bias. Indeed, at this point in the analysis the distinction between actual discharge and Hights' claimed constructive discharge (though already held irrelevant in determin-

ing the elements of a prima facie case, see n. 7) may well be considered relevant. Whatever strained inference Hights might have sought to draw if Horvath had *fired* her on the basis of a month's complaints from co-workers following a month of satisfactory performance, it strains credulity to infer pretext from a mere decision, under those circumstances, to extend the period during which Hights would be retained on a look-see basis. That decision (or really non-decision) reasonably bespeaks open-mindedness rather than the closed mind of the racially biased employer—the latter being a clearly unreasonable inference from the facts.

Several other factors contribute to Hights' inability to demonstrate a triable issue of fact on whether Navistar's stated rationale is a pretext for discrimination. They may be ticked off briefly.

First, it should be remembered Navistar sought Hights out for a higher-paying position shortly after she had said the salary range for the first job she interviewed for was too low (Hights Dep. 80, 89; Horvath Aff. ¶ 2). Both Andrews and Horvath already knew Hights was black, so they clearly were not animated by racial bias when they hired her. Hights presents no evidence explaining why Horvath's behavior only two months later should reflect *racial* bias. Very similar facts contributed to summary judgment against the plaintiff in *Warren v. Quality Care Service Corp.*, 603 F.Supp. 1174, 1180 (W.D.N.Y.1985).

Second, it is again relevant that Horvath didn't fire Hights at the end of her probationary period, as it would have been very easy for Horvath to do. This Court need not *accept* Horvath's assertion that she rather extended Hights' period of probation to give her an opportunity to improve her attitude and relations with other secretaries. What is significant instead is that it would simply make no sense for Horvath to defer the final decision if she were really motivated by Hights' race—that would, after all, produce one of two possibilities during the ensuing period:

1. Fellow workers' complaints might abate, in which event the allegedly race-

motivated supervisor would find it far more difficult to exercise that bias by firing Hights.

2. Those complaints might continue, in which event a firing decision would still meet the same "pretext" charge Hights now raises.

Third, Navistar has established it has often extended the probationary periods of new secretaries in the Law Department when their performance was not satisfactory but could be improved. From October 1979 through October 1986, six Law Department secretaries (including Hights) received extended probation (McMurray Aff. ¶ 4). Four of them were white (*id.*). Such regularity of practice further negates any inference that Hights was singled out for discriminatory treatment.

In sum, while Hights has made out the bare bones of a prima facie case of discrimination—just enough to shift the burden of production, though not of persuasion, to Navistar[11]—Navistar has articulated a totally plausible nondiscriminatory rationale for its employment decision, and Hights has wholly failed to show any disputed material facts sufficient to warrant an inference that Navistar's rationale was a pretext for race-based discrimination. Only someone who finds evidence of bias in every adverse (or even arguably adverse, though more likely neutral) action that has affected someone who *happens* to be black—or Jewish, or female, or from Pakistan, or older[12]—could perceive even a glimmer of such motivation in the record here. That may be Hights' subjective perception, but a court is duty-bound to take a less biased view. Summary judgment must therefore be granted to Navistar on both the Title VII and Section 1981 counts.

### *Contract Claim*

■ Hights also says Navistar breached its employment contract with her when it

extended her probation, a claim pendent to the now-dismissed federal law claims. While it is usually appropriate to dismiss pendent claims when federal claims are dismissed before trial (*United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)), the determination whether to exercise pendent jurisdiction depends on whether the goals of such jurisdiction will be satisfied (*Graf v. Elgin, Joliet & Eastern Ry. Co.*, 790 F.2d 1341, 1347–48 (7th Cir.1986)). Moreover, as this Court has frequently remarked in other contexts, summary judgment is really the equivalent substitute for a trial: It shows no evidentiary hearing is needed to resolve the parties' legal dispute because no outcome-determinative facts are contested.

■ Here the parties have traveled the same long procedural road that normally precedes trial. They have engaged in extensive discovery and briefing in federal court over almost a two-year span. This is not really "before trial" in the *Gibbs* sense. That decision's stated goals of "judicial economy, convenience and fairness to litigants" (383 U.S. at 726, 86 S.Ct. at 1139) would be disserved by a dismissal, requiring the process to begin anew in state court. Pendent jurisdiction will be exercised.

■ Hights claims she entered into an oral contract with Navistar, under the terms of which she would become a "permanent"[13] employee if she satisfactorily completed a 60–day probationary period. Because Horvath extended her probationary period on the 64th day of her employment, Hights contends Navistar breached that alleged agreement.

Hights describes her understanding of the probationary contract this way (Hights Aff. ¶ 6):

Based upon the information related to me by Mr. Andrews in the Personnel

---

11. See *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983), quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

12. This catalog is simply exemplary of the categories of employment discrimination barred by

Title VII (in that order) and by the similarly antidiscriminatory ADEA.

13. "Permanent" is used here as synonymous with non-probationary. Hights does not assert she was promised lifetime employment.

Department on February 22, 1984, and before I started my employment in the Law Department, it was my understanding that I would not be in the employ of the defendant if during the first 60 days of my employment my performance was not satisfactory for any reason.

Navistar understandably expresses surprise that it is now being sued for extending Hights' probation rather than firing her.[14] To use contract terminology, Navistar sees Hights as claiming she bargained for a continue-or-fire decision after 60 days, and then getting *more* than she bargained for.

But that characterization does not settle the matter. Hights says the contract was to continue her as a permanent employee unless her performance was not satisfactory. As already discussed, there are at least arguable factual issues on that latter score. If Hights' performance could be labeled (with the required favorable inferences) as satisfactory, then leaving her in probationary status was indeed *less* than she says she contracted for.

It nevertheless must be concluded Hights' contract claim is riddled with holes. First, even were it assumed that Hights automatically became a "permanent" employee at the end of 60 days,[15] she would then be no more than an employee at will. As such, she could be terminated for "a good reason, a bad reason, or no reason at all" (*Zick v. Verson Allsteel Press Co.*, 623 F.Supp. 927, 931 (N.D.Ill.1985), *aff'd mem.*, 819 F.2d 1143 (7th Cir.1987)). Even if this Court were to assume the purported contract, Hights can scarcely complain about being placed back on probation instead of terminated. If there were indeed a breach, it would be a breach without resulting injury.

Second, there is really no evidence at all that the probationary period was part of a contract between Navistar and Hights. Andrews phoned Hights and offered her a position, which she immediately accepted. There was no mention of a probationary period then. When Hights then reported to work, each of Andrews and Horvath then told her there would be a probationary period.[16]

Those two brief comments are the only basis for the purported contract—Hights received no details about the probationary period either orally or in writing (Hights Dep. 92–93, 97–98). That is far too slender a reed on which to establish enforceable contract rights (cf. *Duldulao v. St. Mary of Nazareth Hospital*, 115 Ill.2d 482, 490, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987) (employee handbook creates contract rights only if it contains a "promise clear enough that an employee would reasonably believe that an offer has been made")).

Third, even if the previously-discussed issues were decided in Hights' favor rather than against her (as is proper), she identifies nothing even suggesting her change in status to "permanent" employment was to be automatic on the 60th day. It is eminently reasonable to allow some time for evaluation. Hights' 30–day review occurred on the 38th day of her employment. There is no reasonable way to label the fact that her 60–day review did not occur until the 64th day as a breach of contract.

 Finally (although this is really overkill), Hights has not even arguably established any damages even if there had been a breach of contract. Navistar's affidavits show Hights suffered no pecuniary loss or any change in benefits because of her probationary status (McMurray Aff. ¶ 6; Andrews Aff. ¶ 11), and Hights does

---

14. And, as already suggested in the text, that it is being sued for extending her probation, rather than arming someone with Hights' mindset with the opportunity to advance a more plausible claim of racial bias. It takes no great stretch of the imagination to expect Hights, had a firing scenario evolved, to be arguing that the probationary-period extensions given white secretaries showed Navistar's antiblack bias in deciding differently on *her* status at the end of the 60–day period.

15. Hights points to no statements by Navistar that her probationary status would automatically be upgraded at the end of 60 days. Nevertheless, much of her argumentation presupposes an agreement along those lines.

16. Hights contends in her memoranda that she "bargained for" a probationary term, but she points to no such bargaining between her and Navistar.

not dispute that (Hights Dep. 316–19). Hights' loss of salary after she resigned cannot be recovered under a breach of contract theory—she had a duty to mitigate damages rather than aggravate them. That leaves only whatever emotional distress Navistar's alleged breach caused. Absent extraordinary circumstances not alleged here, damages for emotional distress cannot be recovered in a breach-of-contract suit (*Maere v. Churchill*, 116 Ill.App.3d 939, 943–44, 72 Ill.Dec. 441, 444–45, 452 N.E.2d 694, 697–98 (3d Dist.1983)).

Hights must lose on her state claim as well as her federal claims. Summary judgment in favor of Navistar is clearly warranted on the breach-of-contract claim as well.

### Conclusion

There are no genuine issues of material fact, and Navistar is entitled to a judgment as a matter of law. Its motion is granted in its entirety, and this action is dismissed.

## APPENDIX

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

CHAMBERS OF
MILTON I. SHADUR
JUDGE

CHICAGO, ILLINOIS 60604

July 6, 1987

Ms. Patricia L. Hights
8616 South Winchester Avenue
Chicago, Illinois 60620

 Re: Hights v. International
 Harvester Company
 86 C 1771

Dear Ms. Hights:

As you know, on July 1 International Harvester Company (now "Navistar") presented its motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. At that time I established this schedule:

 1. Navistar's motion and supporting materials must be filed on or before July 24.

 2. Any responsive materials you plan to file must be submitted (in this Court's chambers) on or before August 21.

 3. Navistar is then given until September 3 to file its reply memorandum.

 4. This case is set for a status conference September 14 at 9:15 a.m.

Because of the importance and potentially final nature of a summary judgment motion, this letter is to inform you of the consequences if you were to ignore this Court's order or if any materials you do submit are legally insufficient.

By its motion for summary judgment, Navistar is asking to have the suit decided in its favor without a full scale trial, based on the evidence presented in the affidavits and documents attached to its motion. Unless you answer the motion with your own affidavits or documentary evidence or both, only Navistar's evidence will be before this Court. Thus your failure to respond in that way would be the equivalent of failing to present any evidence in your favor at a trial. One additional requirement you must comply with is that established by this

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

CHAMBERS OF
MILTON I. SHADUR
JUDGE

CHICAGO, ILLINOIS 60604

Ms. Patricia L. Hights
July 6, 1987
Page Two

District Court's General Rule 12(f), a copy of which is
enclosed with this letter.

Under Rule 56(e) of the Federal Rules of Civil Procedure,
a copy of which is also enclosed, you may not simply rest on
any unsworn documents you may previously have filed in court.
Such documents are not a proper response to a motion for
summary judgment. Under the same Rule, if you do not submit
affidavits or documentary evidence now, this Court may accept
the facts declared in Navistar's affidavits and documents as
true and (if those facts justify a decision in Navistar's
favor) enter summary judgment against you. In that event you
will have lost your case, and judgment will be entered in favor
of Navistar.

That same result may follow if any matters you do submit
are not legally sufficient to establish a defense against
Navistar's claims. Of course this Court is not in a position
to indicate what is necessary for that purpose. It will simply
evaluate any submission you choose to file on or before the
August 21 deadline.

Sincerely,

Milton I. Shadur

MIS:wb
enclosures

cc: Michael Karpeles, Esq.
 Laurence Levine, Esq.

Federal Rule of Civil Procedure 56(e)

(e) Form of Affidavits: Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

(e) **Motions for summary judgment; Moving party.** With each motion for summary judgment pursuant to rule 56 of the Federal Rules of Civil Procedure the moving party shall serve and file, in addition to the affidavits (if any) and other materials referred to in rule 56(e) and a supporting memorandum of law, a statement of the material facts as to which the moving party contents there is no genuine issue that entitle the moving party to judgment as a matter of law, including with that statement references to the affidavits, parts of the record and other supporting materials relied upon to support such statement. Failure to submit such a statement constitutes grounds for denial of the motion.

(f) **Motions for summary judgment; Opposing party.** Each party opposing a Rule 56 motion shall serve and file, together with opposing affidavits (if any) and other materials referred to in rule 56(e) and a supporting memorandum of law, a concise "statement of genuine issues" setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, including with that statement references to the affidavits, parts of the record and other supporting materials relied upon to support such statement. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.