UNITED STATES of America, Plaintiff,

v.

ONE 1985 BMW 318i, VIN
WBAAC8401F0685314,[1]
Defendant.

No. 87 C 3208.

United States District Court,
N.D. Illinois, E.D.

Sept. 13, 1988.
As Amended Oct. 20, 1988.

1. This is the correct vehicle identification number for the defendant BMW. Because the original Complaint had listed an incorrect one, many of the parties' later filings perpetuated the error.

Anton R. Valukas, U.S. Atty., Terry M. Kinney, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Andrew B. Spiegel, Chicago, Ill., for claimant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

In this in rem proceeding, the United States seeks the forfeiture of a 1985 BMW automobile (the "BMW") pursuant to 21 U.S.C. § 881(a)(4).[2] Stella Ifueko Ajibade ("Stella"), the owner of the BMW, has filed a claim in opposition to the forfeiture. Both the government and Stella have now moved for summary judgment under Fed. R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order both motions are denied.

2. All further references to Title 21's provisions will simply take the form "Section—."

## Facts [3]

Forfeiture of the BMW was occasioned by the arrest and later conviction of Stella's husband Michael Kolawole Ajibade ("Kola")[4] on drug charges.[5] Events both before and after the arrest bear on the sustainability of the forfeiture and on Stella's claim and therefore require review.

In the early morning of November 12, 1986 Drug Enforcement Administration ("DEA") officers had Ajibades' residence at 6033 North Sheridan Road, Chicago under surveillance (Christopher Hacias ("Hacias") Aff. ¶¶ 1–2). Special Agent Hacias relates (Hacias Aff. ¶ 3):

> At approximately 7:30 a.m., a red BMW 318I [sic] which belong [sic] to the Ajibades drove into the parking garage. After identifying ourselves as Drug Enforcement Agents we arrested the individual driving the car whom we subsequently learned was Peter Adeleke ["Adeleke"]. A search incident to the arrest revealed a white crystalline powder that we subsequently learned was approximately 24 grams of cocaine.[6]

After arresting Adeleke the agents proceeded to Ajibades' apartment. Kola was not home, but the government says Stella granted permission for the agents to enter

and await his return.[7] At about 9:30 a.m. Kola appeared and was arrested, and a packet containing heroin was recovered from his shirt pocket.[8] Later that day the government took possession of the BMW. Stella says she was told at the time of the seizure that the agents were taking the car "downtown" to verify its ownership (Stella Dep. 47). Nonetheless the BMW has been in the government's possession since November 1986.

Adeleke's stay in custody was brief: On November 13, 1986 he was released on $4,500 bail. Stella says (and the government does not dispute) that the charges against Adeleke were dismissed within a week on the government's motion (S. Mem. 4). Stella further asserts (though without marshalling any record support) the dismissal was occasioned by the government's lack of probable cause for Adeleke's arrest (S.R. Mem. 2–3)—another irrelevancy in this action (though discussed later in this opinion).

On April 6, 1987 the government filed its Complaint here seeking forfeiture of the BMW on the ground that Adeleke had used the vehicle to transport cocaine. After considerable delay Stella filed a claim seeking return of the car,[9] asserting she bought the

---

**3.** Cross-motions for summary judgment impose the Janus-like task of drawing all reasonable inferences in favor of the nonmovant on each motion (*DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987)). Here many of the basic facts are not in dispute. Where the parties do contest the relevant facts or their interpretation, this opinion will note the conflict and draw the appropriate inferences in resolving each motion. Both in this section and later sections "G." will denote the government's filings and "S." will designate Stella's.

**4.** This opinion refers to Stella and Kola collectively as "Ajibades."

**5.** G. Ex. A and G. Mem. 1 reflect Kola's conviction under Sections 846 and 843(b), respectively, of conspiring to distribute heroin and of using a "communication facility" in committing acts prohibited by the Controlled Substances Act (see *United States v. Shittu, et al.*, No. 86 CR 748).

**6.** [Footnote by this Court] Later testing revealed the low purity of the seized substance: Its 24–gram gross weight translated into .445 gram net weight of cocaine (S.Ex. 3).

**7.** Stella disputes the voluntariness of her consent to the agents' entry (S.R.Mem. 5–6; Stella Dep. 51–52). Of course the circumstances under which the agents entered the apartment are wholly irrelevant to this forfeiture action. That non-issue is but one example of the numerous irrelevancies injected by both sides in their filings.

**8.** As with the substance seized from Adeleke, there was a great disparity between the gross (23.45 grams) and net (.037 gram) weight of the drugs taken from Kola (S. Ex. 4).

**9.** When no claims had been filed by anyone during the statutory time limits, the government sought a default decree of forfeiture. On August 11, 1987 this Court's former colleague Judge Susan Getzendanner (on whose calendar the case was then pending) refused the government's request for a default decree and granted Stella leave to file her claim. After the case was reassigned to this Court's calendar on Judge Getzendanner's resignation, the government sought to revisit the issue of Stella's late filing. This Court declined to overturn Judge Getzendanner's earlier ruling.

car in March 1985 with funds she had received as beneficiary of a life insurance policy on her father.[10] Stella also denies any knowledge of, or consent to, the BMW's use by any person for any illegal purpose.

### Legal Standards

As this Court has all too often had occasion to point out (and as litigants all too often appear to misunderstand), summary judgment is essentially a substitute for trial. For example, *Hights v. International Harvester Co.*, 675 F.Supp. 418, 424 (N.D. Ill.1987) put the role of a successful Rule 56 motion in these terms:

> It shows no evidentiary hearing is needed to resolve the parties' legal dispute because no outcome-determinative facts are contested.

Although the normal Rule 56 principle is that the movant bears the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986)), that burden is met if, in response to the motion, the nonmovant (*id.* at 322, 106 S.Ct. at 2552):

> fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Section 881(a)(4) (on which the government relies here) calls for the forfeiture of:

> All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances]....

Such forfeitures involve a shifting burden of proof. Initially the government must show probable cause exists to warrant the forfeiture (*United States v. $84,000 U.S.*

*Currency,* 717 F.2d 1090, 1101 (7th Cir. 1983), *cert. denied,* 469 U.S. 836, 105 S.Ct. 131, 83 L.Ed.2d 71 (1984). That requires the demonstration of a "reasonable ground for belief or guilt; supported by less than prima facie proof but more than mere suspicion" (*United States v. $250,000 in United States Currency,* 808 F.2d 895, 897 (1st Cir.1987), quoting *United States v. $364,-960,* 661 F.2d 319, 323 (5th Cir.1981)). Once the government meets that test, the burden of proof shifts to a claimant "to show by a preponderance of the evidence that the property was not subject to forfeiture" (*$84,000,* 717 F.2d at 1101).[11]

■ Claimants have three possible routes to defeat the government's forfeiture efforts:

1. They can simply disprove the use or intended use of the conveyance to transport a controlled substance.[12]

2. They can also establish one of the two express exceptions built into the statute:

> (a) conveyances used as common carriers, unless the owner was a consenting party or was privy to a drug violation (Section 881(a)(4)(A)) or

> (b) conveyances "unlawfully in the possession of a person other than the owner in violation of the criminal laws of the United States, or of any State" (Section 881(a)(4)(B)).

3. Finally, they can show they fall within the protection of what has become a judicially recognized "innocent owner" exception to forfeiture, derived from this dictum in *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 689, 94 S.Ct. 2080, 2094, 40 L.Ed.2d 452 (1974) (citations omitted):

> It therefore has been implied that it would be difficult to reject the constitutional claim of an owner whose prop-

---

**10.** Though the government insinuates Stella may have used tainted funds to buy the car (G.R.Mem. 4), it tenders no affirmative evidence to disprove Stella's account.

**11.** Although this and later paragraphs speak of what the respective parties must do to prevail at trial, on a Rule 56 motion a party's burden is the lesser one of tendering evidence that, with

reasonable inferences in that party's favor, creates a material factual issue in the required area.

**12.** "Transport" is used here rather than the various other Section 881(a)(4) alternatives because that is what was involved in this case.

erty subjected to forfeiture had been taken from him without his privity or consent.... Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property....

As the further discussion will reflect, this case calls for consideration of all three of those avenues.

As for the last alternative, it is not wholly clear that the quoted passage from *Calero–Toledo* creates the foundation for a forfeiture exception on which a claimant such as Stella can rely. Congress did not insert an "innocent ownership" exception in Section 881(a)(4), while at the same time it did expressly include such provisions in other subsections of Section 881(a).[13] Nonetheless G.R.Mem. 3 acknowledges that "some courts have recognized a limited, judicially created 'innocent ownership' exception" to Section 881(a)(4) on the strength of *Calero–Toledo*.

Our Court of Appeals has not yet addressed whether an "innocent owner" exception must be implied in Section 881(a)(4). Most courts confronted with the claim have either assumed without analysis that such an exception was somehow "established" by *Calero–Toledo* (see, e.g., *United States v. 1966 Beechcraft Aircraft Model King Air A90*, 777 F.2d 947, 951 (4th Cir.1985)) or, having stated that possibility, have held the claimant before them not sufficiently "innocent" in any event (see, e.g., *United States v. One 1973 Buick Riviera*, 560 F.2d 897, 900–01 (8th Cir.1977) (per curiam)). Several courts, however, have addressed the issue head-on and concluded the "innocent owner" defense does exist (see *United States v. One 1981 Datsun 280ZX*, 644 F.Supp. 1280, 1285–86 (E.D.Pa.1986) (collecting cases).

There is really no room for the insertion of the *Calero–Toledo* defense into Section 881(a)(4) as a matter of statutory construction. Congress' decision to exempt the innocent owner from forfeiture of the types of property described in Sections 881(a)(6) and 881(a)(7), while omitting that protection for the owners of vehicles under Section 881(a)(4), must be viewed as a deliberate choice. And it must also be recognized that *Calero–Toledo* itself expressed doubts, not a holding, as to the constitutionality of such a statute (indeed, the Court's decision actually upheld the forfeiture of a yacht leased out by a wholly innocent owner, because the owner had "voluntarily entrusted the lessees with possession of the yacht," 416 U.S. at 690, 94 S.Ct. at 2095).

All the same, there is always force to the notion of avoiding constitutional issues unless they must be faced in all events. For that reason this Court will reserve the constitutional issue, pending a final determination of whether Stella comes within the *Calero–Toledo* dictum anyway. This opinion will therefore examine in part whether Stella has posed a genuine factual issue as to:

    1.  her having been "uninvolved in and unaware of" the illegal use of her BMW (*Calero–Toledo*, 416 U.S. at 689, 94 S.Ct. at 2094) and

    2.  her having "done all that reasonably could be expected to prevent the proscribed use of" the car (*id.*).

*Application of the Legal Standards*

This opinion approaches the parties' cross-motions by first treating two components of Stella's motion:

    1.  her argument that as a matter of law the government has failed to establish probable cause for the seizure; and

    2.  her alternative argument that she is covered by Section 881(a)(4)(B) (that is,

---

**13.** For example, Section 881(a)(7)—which calls for forfeiture of real property used in the commission of a narcotics felony—excludes such property:

    to the extent of an interest of an owner, by reason of any act or omission ... committed

or omitted without the knowledge or consent of that owner.

There is also a parallel exclusion in Section 881(a)(6), which enacts a wide-ranging forfeiture for such property as the proceeds or intended proceeds of drug transactions.

that Adeleke was in illegal possession of the car).

Next the discussion turns to the government's motion to consider whether, again as a matter of law, Stella is not an "innocent owner" of the BMW.

### 1. Stella's Motion

■ Stella contends the government has failed to carry its burden of establishing probable cause for the forfeiture of the BMW—in this instance, probable cause to believe Adeleke was using the BMW to transport cocaine on November 12, 1988.[14] Her argument has two independent facets:

1. There is no adequate showing that Adeleke was driving Stella's car when he was arrested on the morning of November 12, 1986.

2. There is no showing of probable cause to arrest Adeleke.

On the first score, Stella has steadfastly maintained there is no proof Adeleke was driving the BMW at the time of his arrest. Stella said this in her deposition (Stella Dep. 48–49):

Q: When did you find out that Peter Adeleke was driving [the BMW]?

A: That he was driving it?

The DEA agents claim that he had driven it that morning, and that's it.

Q: And they told you that that morning?

A: They told me that, and that's— that was all I knew about it.

\* \* \* \* \* \*

Q: What is your knowledge right now of what happened with Peter Adeleke and your 1985 BMW on November 12th, 1986?

A: It is still the same. I am not even sure he drove the car. You know, still hearsay, still what they have to tell, because the car was in the garage—when I

had to go down to release the car to them, you know, the car was parked in the garage where it was supposed to be....

In response the government offers the affidavit of Agent Hacias quoted at the outset of the "Facts" section of this opinion. Stella R.Mem. 2 attacks that affidavit as insufficient to establish that Adeleke was driving her car because it is both "self-serving" and inaccurate (the latter on the ground that the car belongs not "to the Ajibades" but to Stella alone).

Neither of those contentions can be viewed as having even surface plausibility. To be sure, on occasion a misguided lawyer objects to the admissibility of evidence as "self-serving"—an objection unknown to the rules of evidence. But much of the evidence submitted in most cases could be labeled that way, and that surely goes to weight rather than admissibility. Nor is the Hacias evidence somehow invalidated by his error in failing to specify Stella as sole owner of the car.

One issue Stella hints at but does not articulate calls for brief discussion: Hacias does not specify his basis for identifying the red BMW driven into the garage as the same red BMW that is the subject of this forfeiture action. Rule 56(e) requires that supporting affidavits on a summary judgment motion be based on "personal knowledge," and Hacias does not explain how he personally knows the car Adeleke was driving is the same BMW involved in this case.

But that kind of concern (valid enough where, for example, a narcotics chain-of-custody issue is involved) poses no problem here. All the government's probable cause showing requires is "less than prima facie proof but more than mere suspicion"

---

**14.** In response the government suggests it may have other grounds to seek forfeiture of the vehicle. Surakatu Shittu ("Shittu"), Kola's purported co-conspirator in his drug dealings, attests to Kola's own use of the BMW to distribute drugs and otherwise facilitate drug transactions (Shittu Aff. ¶¶ 4, 7). Those and other Shittu statements are certainly relevant here to the issue of Stella's knowledge of or acquiescence in the prohibited use of her car. But the Complaint cites only Adeleke's use of the BMW as grounds for its forfeiture, and that is all Stella could be expected to have countered on the current motions. If the government intends to rely on Kola's use of the BMW as an alternate ground for forfeiture, it must put that into issue in the right way.

(*$250,000*, 808 F.2d at 897).[15]  And "more than mere suspicion" is a gross understatement on the evidence here (indeed, so is "*more* than prima facie proof"):

1.  Adeleke drove a red BMW 318i into the garage of Stella's apartment building November 12, 1986 (Hacias Aff. ¶ 3).[16]

2.  Stella is the owner of the same make and model vehicle (Stella Aff. ¶ 2).

3.  Adeleke is a friend of Kola's whom Stella acknowledges having known for a couple of months before November 12 (Stella Dep. 42–46).

4.  DEA agents took Stella's BMW from the garage later that day (*id.* 49).

Not only is that more than enough to meet the government's "more than mere suspicion" burden on Stella's motion (that is, with pro-government inferences), but this Court also finds (to jump the gun a bit) there is no genuine issue of fact in that respect even with reasonable pro-Stella inferences—that is, on the government's motion.

Stella next disputes the government's arrest of Adeleke.  Stella's Mem. 4 said in passing that Adeleke was arrested without probable cause.  That mysteriously ripened into a full-fledged basis to defeat forfeiture at her R.Mem. 2–3, where she asserts the DEA agents had no grounds to arrest Adeleke when he drove into the Ajibades' garage and he was arrested on "mere suspicion" at best.  From that premise Stella's R.Mem. 3 purports to conclude the government also lacked probable cause to seize the BMW.

■ Even had it been established (as it was not) that the government lacked probable cause to arrest Adeleke,[17] Stella would still not have advanced her cause.  At issue is probable cause *for the forfeiture*, not for Adeleke's arrest.  For forfeiture purposes the government must merely show the BMW was used to transport a controlled substance.  Clearly the agents' pre-arrest basis for believing Adeleke had committed a crime is a totally separate issue.

But suppose Stella is credited with a related argument she does not advance: that the government illegally obtained the evidence needed to maintain the forfeiture.  Cases such as *United States v. U.S. Currency $31,828*, 760 F.2d 228, 230 (8th Cir. 1985) (citing *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 702, 85 S.Ct. 1246, 1251, 14 L.Ed.2d 170 (1965)) teach:

It is clear that evidence derived from a search which violated the fourth amendment is inadmissible in a forfeiture proceeding.

■ In those cases, however, the claimant asserting inadmissibility is the same person whose Fourth Amendment rights were violated.  Here Stella raises the illegality of Adeleke's arrest—the claimed violation of *his* constitutional rights.  Under fundamental principles of criminal law, Stella lacks standing to complain of the encroachment on Adeleke's Fourth Amendment rights (see *Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 424–26, 58 L.Ed. 2d 387 (1978)).  And although this Court's research has uncovered no case dealing with the comparable question of standing in the context of a forfeiture proceeding, no reason suggests itself for giving the exclusionary rule a broader scope in a civil forfeiture proceeding—with its more for-

---

**15.**  Even for that purpose the government is entitled to all reasonable inferences from the evidence it presents (*DeValk Lincoln Mercury*, 811 F.2d at 329).

**16.**  G.Mem. 2 asserts that while the agents had the Ajibade residence under surveillance, they had been notified Kola had left the residence earlier in a red 1985 BMW.  Because no evidentiary support for that statement has been provided, this opinion has not taken it into consideration.

**17.**  As already noted, Stella has proffered no evidence to support her statement that the charges against Adeleke were dismissed by the government due to the probable cause problem.  Understandably the government has not attempted to defend the legality of the arrest.  That subject was no more than a collateral matter (if indeed that) until Stella filed her reply memorandum, the last submission authorized by this Court.  If the issue were material to the outcome of the present motions (as it is not), this Court would have given the government the opportunity to present its side of the story.

giving burden of proof for the government—than in a criminal action.

Accordingly this Court rejects Stella's attack on the forfeiture based on the assertedly illegal arrest of Adeleke.[18] And that in turn means this Court finds the government has established probable cause to forfeit the BMW, thus shifting the burden to Stella.[19]

Stella's final argument seeks to address that burden: It proffers her defenses to the forfeiture on the assumption that Adeleke was indeed caught using her BMW to transport cocaine. One of those, the statutory defense, may most profitably be reviewed in the first instance on Stella's Rule 56 motion (where inferences are drawn in the government's favor). As for the non-statutory "innocent owner" defense, its content lends itself better to consideration later—that is, in the context of the government's motion (with reasonable pro-Stella inferences), followed by a look back at Stella's motion at that point.

■ In statutory terms, Stella urges Section 881(a)(4)(B) requires the car's return because Adeleke was using it without her authorization. That is a serious distortion of a statutory exception limited to situations in which a vehicle is "unlawfully" in the possession of a nonowner "in violation of the criminal laws of the United States, or of any state." There is nothing in the record, even with the most favorable reasonable inferences, to suggest that Adeleke, a family friend driving Stella's car back to her garage, met that description. Because of the potential availability of a Rule 56(d) finding, the evidence in this area

will be looked at from a pro-Stella rather than a pro-government perspective (understanding that the denial of Stella's motion would then follow a fortiori).

Section 881(a)(4)(B) requires *Stella* to prove that the BMW was illegally in Adeleke's possession (or, on the government's motion, to raise a material factual issue in that respect). On that score S.Mem. 1 says:

> She never authorized ADELEKE to drive [the BMW] for any purpose.

But even were that enough under the statute (and it is not), memoranda are not evidence. In evidentiary terms all Stella Aff. ¶ 6 says is this (emphasis added):

> 6. Affiant at no time authorized any individual to use her vehicle for any *illicit* purpose. Affiant never authorized and has no knowledge that either her husband or PETER ADELEKE ever used her vehicle *to transport drugs.*

That really focuses on the "innocent owner" issue, rather than speaking to whether Adeleke was using the car legally for an assumed innocent purpose. Stella's deposition testimony goes somewhat farther, stating in general terms that she never loaned the car to friends (Stella Dep. 38).

However, both Stella's affidavit and deposition and Kola's affidavit are conspicuously lacking in any effort to negate the obvious alternative that Kola gave Adeleke permission to use the car. In that situation Adeleke cannot even arguably be said to be in possession of the car in violation of the criminal laws. There is nothing to suggest Kola lacked the power to loan the vehicle (see *United States v. One Mercedes–Benz*

---

**18.** Stella's opening Mem. 3 also tendered the issue of the small amount of cocaine—at least in net weight—that was recovered from Adeleke. But that appeal to sympathy belongs in a request for possible administrative relief from forfeiture, not here, for the law is clear that the amount of drugs transported in a vehicle is immaterial to its forfeiture. As succinctly stated in *United States v. One 1986 Mercedes Benz,* 846 F.2d 2, 5 (2d Cir.1988), quoting *United States v. One 1974 Cadillac Eldorado Sedan,* 548 F.2d 421, 425 (2d Cir.1977):

> [T]he transportation of any quantity of drugs however minute is admittedly sufficient to merit the forfeiture of the vehicle.

If the government chooses to loose its forfeiture power based on transporting even the tiniest amount of drugs, it does so with Congress' blessing embodied in Section 881.

**19.** Because of the low level of proof required of the government on the probable cause issue, the analysis to this point has also looked at the evidence with all reasonable inferences in Stella's favor—that is, from the perspective of the government's Rule 56 motion. As a consequence, the finding just stated in the text is appropriate—and this Court makes it—under Rule 56(d) even if the government cannot now prevail entirely on its motion.

*380 SEL*, 604 F.Supp. 1307, 1312–14 (S.D. N.Y.1984), *aff'd mem.*, 762 F.2d 991 (2d Cir.1985) (agent clad in apparent authority to loan car)).[20] And even had that been the case, there is also nothing to suggest Adeleke, an acknowledged family friend, would have known of any such lack of authority.

Stella Dep. 37–38 says Kola used the BMW on occasion. Though she goes on to say "to the best of her knowledge" he would not allow others to drive it (*id.* 39–40), she admitted she wasn't sure whether Kola authorized Adeleke to use the car (*id.* 48). Even more significantly, Kola is entirely silent in his affidavit on the issue of whether or not he permitted Adeleke to use the car.[21] Stella also studiously avoids the significance of Adeleke's having been arrested when he drove *into* the garage where the BMW belonged in the first place—scarcely the hallmark of the car thief. If (as Stella would have it) Adeleke were in possession of the BMW as a criminal (apart from the narcotics offense, which is irrelevant for this purpose), that would be carrying the folklore of "the criminal returning to the scene of the crime" to an illogical extreme.

In sum, Stella (in the face of the statutory burden imposed by Section 881(a)(4)(B)) has produced nothing from which it may even reasonably be inferred (let alone proved) that Adeleke was in possession of the BMW "unlawfully" and "in violation of [any] criminal laws" (except for the narcotics laws, which are not the ones relevant to the statutory defense). That necessarily defeats Stella's summary judgment reliance on the statutory defense. But in light of the pro-Stella drawing of inferences in the just-completed analysis, it also means the government has prevailed on this issue for Rule 56(d) purposes.

### 2. Government's Motion for Summary Judgment

With the issues thus narrowed, the only remaining question is the possibility of Stella's status as an "innocent owner" within the scope of the *Calero–Toledo* formulation. Because of the nature of the evidence bearing on that question, it will first be explored under the standard of the government's summary judgment motion: that is, whether Stella has succeeded in establishing a genuine factual issue on that score. When the answer turns out to be "yes" (as it does), only a brief look will prove necessary to show that Stella also cannot prevail on the issue at this point in the litigation.

■ To prevail ultimately on the "innocent owner" defense, Stella must prove not only (1) that she was unaware of and uninvolved in Adeleke's use of the BMW to transport cocaine but also (2) that she took all steps that could reasonably be expected to prevent such proscribed use of the car. In those terms Stella's submissions are enough to fend off the government's summary judgment effort by demonstrating that a genuine factual issue exists.

■ For purposes of the first half of her innocence test, Stella's Aff. ¶ 6 explicitly states she had no knowledge of and never authorized the use of her car to transport drugs. As for her reasonable steps to prevent misuse of the car, Stella Aff. ¶ 12 says she "never saw and was never aware of the presence of any illicit drugs in her home." While her affidavit is silent as to Stella's knowledge of her husband's admitted drug habit, she did say during her deposition (Dep. 31–32, 49) she had no knowledge of Kola's drug use or, in fact, of any drug use or drug sales by her or Kola's friends or relatives. Kola's own Aff. ¶¶ 2–3 admits to his drug use, but he goes on to deny ever having drugs in his and Stella's apartment (*id.* ¶ 10).

In response, the government attempts to undercut Stella's claims of innocence and ignorance primarily through the affidavit

---

**20.** It hardly needs saying that the husband-wife situation affords an even stronger case than a principal-agent relationship for applying the principle just stated in the text.

**21.** Stella originally submitted an affidavit from Kola lacking notarization and also deficient in other technical respects. That triggered a government motion to strike the affidavit, a motion mooted when Stella resubmitted the affidavit in proper form.

of Kola's purported co-conspirator Shittu. Shittu Aff. ¶ 3 says he bought drugs from Kola and *id.* ¶ 4 says Kola used the BMW to bring drugs to Shittu. More critical for present purposes are Shittu's statements that Stella was fully aware of Kola's drug dealings. Shittu claims to have delivered a $5,000 drug payment to Stella (*id.* ¶ 5) and to have been present in the Ajibades' apartment with both of them and a drug courier when a quantity of heroin was in plain view (*id.* ¶ 6). Both Stella and Kola expressly deny Shittu's allegations (Stella Aff. ¶¶ 7–8, 10–12; Kola Aff. ¶¶ 1, 6–8, 10–12).

Summary judgment motions are not the occasion for the weighing of evidence or determinations of credibility (see *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)). It may be that the trier of fact[22] will not be persuaded by the version Stella presents in her own interest, buttressed by the statements from her now-convicted husband.[23] But this simply is not the kind of situation that produced summary judgment for the government in *United States v. 1980 Red Ferrari,* 827 F.2d 477, 480 (9th Cir.1987), where the court found the claimant could maintain his ignorance about the connection between his vehicle and past

drug activity "only by 'sticking his head in the sand.'" It takes only a reading of the factual scenario in that case to see that Stella, armed with the appropriate reasonable inferences, stands on a wholly different footing here.

On the second "innocent owner" question—whether Stella took all reasonable steps to prevent the use of her car for prohibited activities—the cases teach an owner of a vehicle in a noncommercial setting is not required to take extraordinary steps to prevent such misuse unless he or she is put on notice that potential users of the car are connected with drug activity (contrast *One 1981 Datsun 280ZX,* 644 F.Supp. at 1287–88 with *One 1973 Buick,* 560 F.2d at 900–01). Once more Stella is saved by the need to credit her version of events at this stage. In those terms Stella must be viewed as unaware of any drug use by Kola or others around him, and therefore as not having been put on notice that allowing Kola or others to use the BMW could result in the car transporting drugs or otherwise facilitating a drug violation.[24]

This Court must therefore deny the government's motion for summary judgment because a genuine issue remains as to

22. *United States v. One 1976 Mercedes Benz 280S,* 618 F.2d 453, 456 (7th Cir.1980) held the owner of a seized vehicle has the right to a jury trial in a forfeiture proceeding. S.Mem. 7 claims Stella filed a timely jury demand, but the record does not reflect that. Stella's court-filed Answer and Claim say nothing about that. One document in this Court's chambers file (received from Judge Getzendanner, given the date it carries) is captioned "Response to Motion for Default Decree of Forfeiture" and does append a jury demand. But that document, bearing an internal date of August 3, 1987 (nine days before Stella's Answer was filed), contains no date stamp indicating when or under what circumstances it was received. This Court also has a transcript of the August 4, 1987 hearing before Judge Getzendanner, in which Stella's counsel refers to a proposed response to the government's motion for a default, asking leave to file a claim and jury demand (Tr. 2). Judge Getzendanner did not rule that day, but a week later she denied the default and authorized Stella's filing of a claim (Aug. 11 Tr. 5). What counsel then proceeded to file for Stella was a different form of claim from the unstamped version in the chambers file, *without* any jury demand. No original of the earlier form (and no jury

demand) appears in the official court file, and there is no record of any such filing on the case's docket sheet. At the next status hearing, both sides should be prepared to address whether Stella has in fact filed a timely and effective jury demand.

23. Shittu is also a convicted felon (he had testified against Kola in the criminal trial, Shittu Aff. ¶ 1, no doubt pursuant to a guilty plea). That underscores the need for sorting out credibility matters at trial, though Stella's attempted impeachment of Shittu on a claimed inconsistency (S.Mem. 7) is effectively refuted by G.R. Mem. 7 n. 4.

24. Among the nonissues at this point in the case is the parties' lengthy debate on whether Stella took adequate precautions to safeguard her keys to the BMW. Even if Stella did nothing to hinder Adeleke's use of her car, that does not undermine her claim of innocence if she was in the dark as to his involvement with drugs. And conversely, if she did have the kind of knowledge of Kola's drug activity the government claims, her then allowing Kola to use the BMW (and Kola's then allowing Adeleke to do so) would torpedo her "innocent owner" defense.

whether Stella was an "innocent owner" under the *Calero–Toledo* standard. On the other hand, the rehearsal of the government's evidence on that issue (the Shittu affidavit and more) has shown that when all reasonable inferences are drawn in the government's favor, summary judgment cannot be entered in Stella's favor either. Although that means a trial is necessary, it should be remembered that this Court has reserved the question whether a court-implied "innocent owner" exception is required to save the constitutionality of Section 881(a)(4).

## Conclusion

This Court denies both motions for summary judgment, but it finds for Rule 54(d) purposes:

1. There was unquestionably probable cause for the government to believe Adeleke was driving the BMW when arrested with cocaine in his possession, and therefore to seize the BMW.

2. Stella lacks standing to attack the government's probable cause for the forfeiture based on the purportedly illegal arrest of Adeleke.

3. Adeleke's possession of the BMW was neither "unlawful" nor "in violation of the criminal laws of the United States, or of any state," so the statutory exception to forfeiture in Section 881(a)(4)(B) is inapplicable.

Because genuine issues of material fact remain as to whether Stella can obtain shelter from the forfeiture under the nonstatutory "innocent owner" exception (if one exists, a question not yet decided by this Court), this action is set for a status hearing at 9 a.m. September 23, 1988. At that time the parties are expected to address (1) the steps necessary to prepare the case for trial and (2) the jury trial question posed in n. 22.